On referral letter dated February 26, for resolution
of a jurisdictional dispute, remanded July 28, 1980

INGERSOLL,
*Plaintiff,*
*v.*
(No. 192-497, M 28)
MATTSON, et al,
*Defendants.*
*and*
INGERSOLL,
*Plaintiff,*
*v.*
MATTSON, et ux,
*Defendants.*
(No. 193-812)
614 P2d 1197

[463]

Charles C. Erwin, Portland, for plaintiff.

Frank Wall, Portland, for defendants.

Before Richardson, Presiding Judge, and Joseph and Gillette, Judges.

GILLETTE, J.

## GILLETTE, J.

Plaintiff brought an action for forcible entry and detainer (FED) in Multnomah County District Court, seeking possession of certain residential premises based upon nonpayment of rent. In her answer, defendant alleged that she was a contract purchaser of the real property in question and requested that the court adjudicate the rights and interests of the parties in that property or, alternatively, that defendant be awarded damages in excess of $3,000 for plaintiff's breach of the contract between the parties and for unlawful entry, together with attorney's fees. A motion to have the case transferred to circuit court was granted. *See* ORS 46.060(4); 46.070; *see also Marquam v. Brewer,* 40 Or App 175, 594 P2d 1327 (1979). The circuit court remanded the case to district court. We were then asked to resolve the jurisdictional dispute pursuant to ORS 46.063.[1]

The case is before us because of an apparent conflict between certain portions of ORS ch 46, which relates to the general jurisdiction of the district courts, ORS 105.110, which concerns FEDs, and portions of ORS ch 91, the Residential Landlord and Tenant Act. After examining the chronology and, to a certain extent, the legislative history of these various provisions, we find no conflict. We deal with the pertinent statutes chronologically.

Prior to 1973, jurisdiction over FED proceedings was governed by ORS 105.110, which provides:

"When a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and possession is held by force, the person entitled to the premises may maintain in the county where the property is situated an action to recover the possession thereof *in the circuit court, district court or before any justice of the peace of the county.*" (Emphasis supplied).

---

[1] *See also LFC v. Burtchaell,* 47 Or App 471, 614 P2d 1201 (1980).

However, since 1973, residential FEDs have been governed by later legislation, which we will now discuss.

In 1973, the Oregon legislature Residential Landlord and Tenant Act, ORS 91.700 *et seq.* Within that Act, ORS 91.810(1) provides:

"(1) In an action for possession based upon non-payment of the rent or in an action for rent when the tenant is in possession, *the tenant may counterlaim for any amount, not in excess of the jurisdictional limits of the court in which the action is brought, that he may recover under the rental agreement or ORS 91.700 to 91.900.* * * *" (Emphasis supplied).

The 1973 Act originated in Senate Bill 159, section 31 of which allowed for counterclaims by tenants. The amount of the counterclaim was unlimited. The original bill also precluded counterclaims which were not based upon the lease between the parties or on the provisions of the Residential Landlord and Tenant Act.[2] The minutes of the Senate and House Local Government and Urban Affairs Committees reveal that the issue of whether counterclaims by tenants in FED cases would be permitted at all was seriously considered.

The House committee minutes for June 1, 1973, reveal that the committee wanted tenants to have the right to counterclaim in FEDs, but wanted the subject matter of the counterclaims to be limited to the underlying lease or to other provisions of the Residential Landlord and Tenant Act. At the third reading in the House, the question as to whether counterclaims should be allowed at all was again raised, together with the issue of limiting the amount of a counterclaim. The question was resolved in favor of allowing counterclaims and the bill passed in the House with no limitations on the amount of a counterclaim.

---

[2] Senate Bill 159 reads, in part, as follows:

"(1) In an action for possession based upon nonpayment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount he may recover under the rental agreement or sections 1 to 44 of this Act."

At the third reading in the Senate, however, the Senate refused to concur with section 21, which by that time had become the counterclaim section of the bill. On June 27, 1973, a joint House and Senate conference committee submitted its report, suggesting the addition of the language "not in excess of jursidictional limits of the court in which the action is brought" to section 21. The Senate and House agreed to the amendment limiting the amount of the counterclaim. Debate in both houses established that the reason for adding the language was to expedite handling of such cases by preventing their transfer from one court to another.[3]

The purpose of ORS 91.810(1), as finally enacted, is clear. There was to be no forum shopping, *i.e.,* the court in which the FED was brought was to be the court that heard and decided the matter. It was not to be possible for a tenant to delay the case by asserting claims for amounts outside the jurisdiction of the court in which the FED was originally filed. The section was necessary because, under ORS 105.110, FEDs could be brought in courts which had limited jurisdictions.

■    After the 1973 Act, therefore, an FED could be filed in circuit, district or justice court and a defendant could then file any counterclaim relating to either his lease or the Residential Landlord and Tenant Act. Where the case had been brought in district or justice court, however, the counterclaim could not be for an amount in excess of the jurisdictional limit of the court in which it was brought.

At the 1975 legislative session, the legislature enacted the present form of ORS 46.070, which provides, in pertinent part,

"*In all actions* instituted in a district court a defendant *shall have the right* to plead a counterclaim in excess of the jurisdiction of the court. If a

---

[3] Senate floor discussions of June 29, 1973; House floor debates of June 28, 1973.

defendant has pleaded a counterclaim in excess of the jurisdiction of the district court, the court shall strike the counterclaim and proceed to try the cause as though it had never been filed, unless the defendant files with his counterclaim a motion requesting the cause to be transferred to the circuit court accompanied by the tender of the costs of such transfer. * * *" (Emphasis supplied).

ORS 46.075(1) provides, in pertinent part:

"The district court *shall order* the transfer to the circuit court of every cause authorized by this chapter to be so transferred. * * * Thereupon the district court shall proceed no further with the cause. The case *shall be considered transferred* to the circuit court which *shall* then have jurisdiction to try and determine the cause." (Emphasis supplied).

■ The phrase "[i]n all actions" in ORS 46.070 raises the question of whether this later statute repeals by implication—there was no express repealer—the counterclaim limit of ORS 91.810. Repeal by implication is not favored. *See, e.g., Thompson v. IDS Life Ins. Co.,* 274 Or 649, 549 P2d 510 (1976); *League of Women Voters v. Lane Co. Bndry Comm.,* 32 Or App 53, 58, 573 P2d 1255, *rev den* (1978).

■ Legislative history from the 1975 session does not suggest repeal was intended. The provision which is the present form of ORS 46.070 was included in SB 248 as section 19. The bill was proposed originally by the Governor's Commission on Judicial Reform. It provided for *non-exclusive* jurisdiction in district courts for FEDs.[4] Consequently, since exclusive juris-

---

[4] Senate Bill 248 as proposed by the Governor's Commission on Judicial Reform, provided as follows:

"46.060. (1) The district courts shall have jurisdiction, but not exclusive, in the following cases:

"* * * * *

"(e) To hear and determine actions of forcible entry and detainer."

diction was not recommended, the commentary accompanying the bill did not discuss the area of concern here.

The Senate Judiciary Committee reviewed SB 248 and deleted all of the bill, except for the provision repealing the 1973 legislation making district courts courts of record in 1975. The House, on the other hand, amended the measure to give district courts exclusive jurisdiction in FED cases.[5] The House floor discussion of the bill on June 11, 1975, focused on other issues and not on section 19 (now ORS 46.070). The subsequent Senate discussion of the bill on June 14, 1975, did not deal with section 19, either. Ultimately, the House and Senate agreed on exclusive district court jurisdiction, and ORS 46.070 became law without any discussion being specifically directed to it during the House and Senate debates.

The reports from the Judiciary Committee indicating conflicts between SB 248 and current law or pending legislation did not indicate that the legislature recognized that section 19 conflicted with ORS 91.810. The history of ORS 46.070 does not appear to deal with the impact of the legislation on the Residential Landlord and Tenant Act or the Residential Landlord and Tenants Act on it.

From the above history, we conclude that the legislature did not, by enactment of ORS 46.070 in 1975, mean to upset the balance it had struck by the enactment of ORS 91.810 only two years earlier. Rather, we hold that the specific provision—ORS 91.810—governs the general one.

---

[5] The House Minority Report (Senate Bill 248) would have had the statute read as follows:

"(1) Except as provided in subsection (2) of this section, the district courts shall have exclusive jurisdiction in the following cases:

"* * * * *

"(e) To hear and determine actions of forcible entry and detainer."

[469]

Our conclusion requires us to reconsider the one occasion on which we spoke to the relationship between ORS ch 46 and FEDs.

■ In *Marquam Investment v. Brewer,* 40 Or App 175, 594 P2d 1327 (1979), defendant in an FED action brought counterclaims in excess of $3,000. After her motion to transfer the case to circuit court was denied, she withdrew the counterclaims and prosecuted them separately in circuit court. We held that institution of the second proceeding meant that defendant had not preserved her claim of error concerning the denial of transfer. We went on to state, however,

"\* \* \* in the interest of resolving recurrent jurisdictional problems which have arisen in cases where counterclaims are filed by defendants in FED actions,"

that the district court should have transferred the FED to circuit court upon defendant's application. 40 Or App at 178. Our opinion in *Marquam Investment* said nothing about ORS 91.810.[6]

Our analysis of the legislative history of these measures, *supra,* leads us to conclude that our *dictum* in *Marquam* was wrong, and it is disapproved. In view of the specific provision of the Residential Landlord and Tenant Act, we hold that the circuit court correctly remanded this FED for consideration in district court.

Remanded for proceedings consistent with this opinion.

---

[6] More recently, in *Brood v. Davis,* 44 Or App 261, 263, 605 P2d 749 (1980), we once again addressed the transfer provisions of ORS ch 46, stating,

"The statutes do not authorize or permit scrutiny of the counterclaims for sufficiency by the district court. They require transfer."

*Brood v. Davis,* however, was not an FED action, and we therefore had no occasion to reconsider our *dictum* in *Marquam Investment.* The present case requires us to do so.